## BUSH *vs.* PETTIBONE, sheriff, &c.

At common law, a defendant can not be discharged from arrest or imprisonment in a civil suit on the ground that he was insane at the time of the arrest, or became so afterwards.

The 33d section of the act to organize the state lunatic asylum authorizes the first judge of a county to discharge a prisoner confined on civil process, and "order him into safe custody and to be sent to the asylum." Under this statute the order of discharge must contain a direction that the prisoner be sent to the asylum, or else it will be void, and the sheriff will be liable for an escape.

A prisoner discharged and sent to the asylum under this statute, on being restored to sanity, may, it seems, be arrested again by his creditor.

BUSH sued Pettibone, sheriff of the county of Cayuga, for the escape of Norris King, who was imprisoned by virtue of a *capias ad satisfaciendum* issued upon a judgment in favor of the plaintiff. Pending the imprisonment of King, an application was made to the first judge of Cayuga county, alledging that he had become insane, and asking an examination into his mental condition, pursuant to the "act to organize the state lunatic asylum," passed April 7, 1842, (*Stat.* 1842, *p.* 149.) An examination was accordingly had; and the first judge made an order reciting the proceedings before him, and directing King to be discharged from his imprisonment. *The order contained no*

*direction that the prisoner be sent to the lunatic asylum.* This order was relied on as a defence in the action. SILL, J. before whom the cause was tried at the Cayuga circuit, in July, [301] 1840, held it to be no defence, and the plaintiff had a verdict. The supreme court, in the fifth district, refused a new trial, and after judgment the defendant appealed to this court.

*M. T. Reynolds*, for appellant.

*N. Hill, Jr.* for respondent.

RUGGLES, J. At common law, a defendant can not be discharged from arrest in a civil suit on the ground that he was insane at the time of the arrest or became so afterwards. (*Nutt* v. *Verney*, 4 *D. & E.* 121; *Kernott* v. *Norman*, 2 *id.* 391.) He may be brought up and surrendered into custody in discharge of his bail, and of course may be imprisoned on a *capias ad satisfaciendum*. (3 *B. & P.* 550.) Lord Eldon, in *Steel* v. *Allan*, (2 *id.* 362,) said, "I am afraid there is no prohibition in the law of England against arresting a lunatic;" and accordingly a motion to discharge an insane defendant out of custody upon a common appearance was denied.

I find no authority in the laws of this state for discharging a party in a civil suit from imprisonment, on the ground of his insanity, excepting in the "*act to organize the state lunatic asylum, and more effectually to provide for the care, maintenance and recovery of the insane*," passed April 7, 1842. The object of this statute appears from its title. It is to "provide for the care, maintenance and recovery" of the class of persons above mentioned. The 32d section relates to insane persons confined in jail for crime. That section contains, in substance, an authority for the removal of such persons, by order of the first judge of the county, from the jail to the lunatic asylum, where they are to remain until restored to their right minds, and then to be remanded to prison to be further prosecuted.

The prisoner Norris King was discharged under color of the 33d section of the same statute. By that section it is enacted,

that if a person imprisoned on civil process becomes insane, and if it be proved to the satisfaction of the first judge that he is in- [302] sane, " the judge may discharge him from imprisonment and order him into safe custody and to be sent to the asylum." The creditor may renew his process and arrest him again, when of sound mind.

The object of discharging the prisoner under this statute was to provide for his care, maintenance and recovery; and this was to be effected by removing him to the asylum. This is to be inferred not only from the title of the act but from its other provisions, for the erection of extensive buildings for the reception of insane patients, containing accommodations for their comfort, and physicians, nurses and attendance, for their treatment and cure. The provisions of the statute are limited and confined to this object. It could not have been the intention of its framers to interfere between the creditor and his insane debtor for any other purpose than to receive the latter into the asylum. The discharge from the custody of the sheriff was authorized, because the insane man could not be taken to the asylum without it; and the discharge was intended to be subservient to that purpose only. This appears from the words of the act; the first judge " may discharge him and order him into safe custody to be sent to the asylum." That duty of sending to the asylum is inseparably connected by the statute with the exercise of the power of discharging. The duty is prescribed in the same sentence in which the power is created ; and if the duty be separated from the power, the object of the statute is no way attained. The power of discharging the prisoner without at the same time send ing him to the asylum, is not granted by the statute.

The order of the first judge was a general discharge, leaving the prisoner to go at large, and was therefore fatally defective and void. The defect appeared on the face of the paper, and the sheriff was not at liberty to obey it.

The judgment of the supreme court should be affirmed.

Judgment affirmed.