## WILCKENS v. WILLET.

December, 1864.

Affirming 12 *Abb. Pr.* 319; S. C. 21 *How. Pr.* 40.

The removal of a prisoner having the liberties of the jail, from the limits thereof by virtue of a valid legal process which affords justification to the officer taking him thence, is not an escape within 2 *R. S.* 437, § 63.*

Either house of Congress may issue its warrant or attachment to bring before it, for the purpose of giving necessary evidence in legislative proceedings, a witness charged with contempt, and by such process may take him from the custody of the sheriff by whom he is imprisoned on execution in a proceeding in a State court. Congress is not restricted to proceeding by *habeas corpus* in such cases.

Jacob Wickelhausen (for whom, on his death pending the action, Ann Wilckins and Thomas Achellis, executors, were substituted as plaintiffs) sued James C. Willett, sheriff of the county of New York, in the New York superior court, to recover damages for the escape of one Williamson, a prisoner on civil process, who was taken from the sheriff's custody to answer for contempt at the bar of Congress. The facts are stated in the opinion.

On the trial, defendant had a decision in his favor, and the judgment entered thereon was affirmed by the court at general

---

* See Carpentier *v.* Willet, vol. 1, p. 312, of this series.

term, on the ground that, at the time the action was com-
menced, Williamson was off the limits, not by any act or agency
of his own, but compulsorily, by process and authority of law,
and that therefore his being so off was no more an escape than
if he had been at the time removed and held by *habeas corpus
ad testificandum*, or by force of a valid judicial order.

From this judgment the plaintiffs appealed to this court.

*Charles P. Kirkland*, for plaintiffs, appellants.

*A. J. Vanderpoel,*, for defendant, respondent.

BY THE COURT.—T. A. JOHNSON, J.—John D. Williamson,
for whose alleged escape this action was brought, was im-
prisoned upon an execution duly issued against his person in
the city of New York, and had secured the right of the jail
liberties. While thus situated, he was served with a subpœna,
in due form of law, to attend and give evidence before the house
of representatives of the United States Congress, or a com-
mittee thereof, and failing to appear, was adjudged guilty of a
contempt. A warrant, in the customary form, was thereupon
issued and delivered to the sergeant-at-arms, to arrest said
Williamson, and bring him before the said house, at the bar
thereof, to answer to the said charge of contempt, and to be
dealt with according to the constitution and laws of the
United States.

In pursuance of this warrant, the sergeant-at-arms, on Feb.
2, 1858, arrested said Williamson within the jail liberties, and
took him, and compelled him to go to Washington, under and
by virtue of the said warrant, and before the bar of said house.
He was detained upon said process until the 9th of the same
month, when he returned to the liberties of the said jail. This
action was commenced against the sheriff on Feb. 5, and before
the return of said prisoner.

Was this an escape for which the sheriff was liable ?

Our statute (2 R. S. 437, § 63) provides, that " if any prisoner
committed to any jail on execution in a civil action, or upon
an attachment, for the non-payment of costs, shall go or be at
large without the boundaries of the liberties of such jail, with

out the assent of the party at whose suit such prisoner was committed, the same shall be deemed an escape of such prisoner, and the sheriff having charge of such jail shall be answerable therefor to such party for the debt, damages or sum of money for which such prisoner was committed." This section contains in terms no exception whatever in favor of any cause of the prisoner's being thus at large. His going or being without the boundaries of the liberties, " shall be deemed an escape," and the sheriff shall be liable. Such is the plain reading of the section, and, if no exceptions are to be implied, but the language is to be held to apply to any and every going or being thus at large, whether voluntary or involuntary on the part of the prisoner or the sheriff, this action must be regarded as well brought, and the plaintiff entitled to recover, without reference to the question of the authority of the speaker's warrant, and of the officer by whom the prisoner in question was taken without the boundaries of the jail liberties in this case, and upon which this action is founded. Section 61 of the same article of the Revised Statutes provides, that all persons committed to any jail, upon any process, for contempt, or committed for misconduct, in the cases prescribed by law, shall be actually confined and detained within the jail until they shall be discharged by due course of law. It then provides that if any sheriff or keeper of a jail shall permit or suffer " *any prisoner so committed*" to such jail to go or be at large out of his prison, " except by virtue of some writ of *habeas corpus* or rule of court, or in such other cases as may be provided by law," shall be liable to the party aggrieved for his damages sustained thereby. The exception here prescribed does not, it will be seen, embrace the case of a person committed, as was the prisoner in question, upon execution, and duly admitted to the liberties of the jail, but is expressly limited to the case of " *prisoners so committed,*" *i. e.,* upon process for contempts or for misconduct. But although the exception specified in section 61 does not by its terms or intention reach the case of the prisoner in question, it furnishes, I think, an unmistakable key to the true reading and interpretation of section 63, and shows that the going or being without the liberties of the jail, provided for by that section, which was to be deemed an escape, was by the act, and upon

the volition of the prisoner and not upon the compulsion of of judicial process.

The object plainly was not to favor sheriffs holding prisoners of this class committed for contempts and misconduct in reference to escapes, but to place them upon the same legal footing in regard to escapes from the jail by such prisoners as that in which they stood in respect to escapes by prisoners committed on execution in a civil action. If the prisoner is without the liberties by virtue of a valid legal process, which affords a complete justification to the officer having him thus without, in charge, it is not deemed an escape, and no action lies against the sheriff. The general rule at common law seems to have been, that nothing but the act of God or the king's enemies would excuse the sheriff for an escape from prison by a prisoner committed on execution. This was declared to be the rule by Lord LOUGHBOROUGH, in Alsept *v.* Eyles, 2 *H. Blackst.* 108, 113.

If the jail took fire, and the prisoners by means thereof escaped, the sheriff was excused if the fire was the act of God. *Bac. Abr.* tit. Escape in Civil Cases, H. And in Southcote's case, 4 *Co.* 84, it is laid down as the rule that "if traitors break a prison, it shall not discharge the jailor; otherwise if the king's enemies of another kingdom; for in the one case he may have his remedy and recompense, and in the other case not." The reason here given why the jailor should not be liable in case the prison was broken by the king's enemies of another kingdom, shows the cogency and soundness of the exception to the general rule of the common law, which I regard as well established in favor of sheriffs, where the prisoner is without the prison, or jail liberties, by virtue of some order of a court or officer of competent jurisdiction, or of some legal process which affords a justification to the officer executing it, and against whom the sheriff can have no "remedy and recompense." It has long been settled, both here and in England, that taking a prisoner, who was imprisoned on execution in a civil suit, away from the prison or the jail liberties on a *habeas corpus ad testificandum,* to testify, was no escape. Noble *v.* Smith, 5 *Johns.* 357; Hassam *v.* Griffin, 18 *Id.* 48; Wattles *v.* Marsh, 5 *Cow.* 176; Martin *v.* Wood, 7 *Wend.* 132; 3 *Esp. Cas.*

283 ; 3 *Burr.* 1440 ; 4 *East,* 587. And so when the prisoner has been discharged from his imprisonment, by the order of a court or judicial officer, it has been held a good defense for the sheriff, in an action for the escape, provided the court or officer making the order had jurisdiction to make it, even though such order was erroneously made, and might be avoided. Cantillon *v.* Graves, 8 *Johns.* 472 ; Hart *v.* Dubois, 20 *Wend.* 236. Otherwise, however, where the order is void upon its face, or is granted by an officer who has no jurisdiction in the matter. Bush *v.* Pettibone, 4 *N. Y.* 300 ; Cable *v.* Cooper, 15 *Johns.* 152. In Field *v.* Jones, 9 *East,* 151, the prisoner had signed his petition for the benefit of the day-rule, but left the king's bench prison before the sitting of the court on the day on which the rule was granted. The rule was granted in his favor upon the sitting of the court on that day, but not until after the action for the escape was commenced against the marshal. But the rule was held to cover the entire day when granted, and to be a justification to the marshal in the action. It is clearly enough to justify the sheriff to show that the absence of the prisoner is in pursuance of lawful authority.

To constitute an escape, there must be some agency of the prisoner employed, or some wrongful act by another against whom the law gives a remedy. *Allen on Sheriffs,* 231 ; Baxter *v.* Taber, 4 *Mass.* 367 ; Cargill *v.* Taylor, 10 *Id.* 206. Whenever the principal, by the act of God or of the law, is taken out of the bail's keeping, as it were, before the day of surrender and without fault in the bail, they are discharged. 5 *Dane Abr.* 290 ; Way *v.* Wright, 5 *Metc.* 380; Fuller *v.* Davis, 1 *Gray,* 612. And it has been held, that a person privileged from arrest may leave the jail without the sheriff being liable for an escape. Ray *v.* Hogeboom, 11 *Johns.* 433. And so, where he has been released by act of the legislature. Mason *v.* Haile, 12 *Wheat.* 370. These cases, and many more which might be cited, show clearly, that the act of the law, as well as the act of God, or of the public enemies, will excuse a sheriff in an action for an escape; and that absence from the jail, or the jail liberties, by such means or from such causes, by the prisoner, are not within the contemplation of the statute, and are not the going or being at large, referred to in section 63.

The question then arises, whether the prisoner in this case was removed from the jail liberties to Washington, by authority of law or legal process. This authority must, I apprehend, be paramount to that under which the person so removed is held, in order to justify the removal, or, at all events, of such a nature that the officer or person effecting the removal could justify under it in case of an action brought against him by the sheriff for taking his prisoner out of his custody. Any extended examination of the question of the general power of the house of representatives of the United States Congress to subpœna witnesses to testify before it, or before one of its committees, and to compel their attendance from any portion of the territorial limits of the United States, is rendered unnecessary in this case by the full and unreserved concession of the learned counsel for the plaintiff, of the existence of such a power in that body. That the power exists, there admits of no doubt whatever. It is a necessary incident to the sovereign power of making laws; and its exercise is often indispensable to the great end of enlightened, judicious and wholesome legislation. The power is rather judicial in its nature, but in a legislative body exists as an auxiliary to the legislative power only. In the earlier history of the country, from which our institutions both of law and legislation are principally derived, judicial and legislative functions existed in and were exercised by the same body. And when they were afterward separated, and each came to be exercised by a separate tribunal or body, the legislative body necessarily retained a sufficient amount of the judicial power, to enable it to investigate fully and to comprehend thoroughly any and every subject upon which the body proposed to act in its legislative capacity. This included the power to subpœna witnesses to give evidence, to compel them to attend and testify, and to punish for disobedience and contempt in refusing to attend, or in refusing to testify upon attendance. The power to punish for disobedience and contempt is a necessary incident to the power to require and compel attendance. This is not denied by the plaintiff's counsel. He contends, however, that the only way in which the attendance of Williamson before the house of representatives could have been lawfully enforced and secured, was by *habeas corpus* to testify, or to answer for the

contempt. This is unquestionably the mode provided by law, where a witness imprisoned on civil execution is required to give evidence before a court, or to answer there for a contempt. Our statute, 2 *R. S.* 559, sections 1 to 5, inclusive, provides for such cases, where the person is brought up on such process, either to testify or to answer for a contempt. The prisoner is to be remanded after having testified, and if any order of commitment is made against him, it must be to the prison from which he was taken. People *v.* Rogers, 2 *Paige*, 103.

The statute, however, only relates to actions and proceedings in courts, and not to proceedings before legislative bodies. In regard to those bodies, if their practice is not regulated by any statute, they are to proceed according to their customary rules and practice. It is not denied in this case, that Williamson, the prisoner, was taken before the house of representatives on the occasion in question, upon the regular and customary process used by that body to bring prisoners to its bar, who had refused to obey the subpœna to appear and testify, and had been adjudged in contempt, for which they are required to answer. The warrant issued, gave the sergeant-at-arms the right to take the person of Williamson into his custody, and convey him to Washington, to answer and purge his contempt, if he could. It can not be denied, I think, that while he was thus in the custody of the sergeant-at-arms, under this warrant, and while he was before the house, until his discharge, he was in the custody of the law. The question then arises, whether he was at large during this time, within the meaning and intention of the statute, so as to constitute an escape. I am clearly of opinion that he was not. He was without the jail and the jail liberties, it is true, but he was still in the custody of the law, and was absent for a cause or purpose for which the policy of the law allows prisoners to be absent temporarily, provided they are still in the custody of the law. It was no more an escape than it would have been had the prisoner been without the liberties on *habeas corpus.* The law allows a creditor, in certain cases, to confine the person of his debtor within the jail, or the jail liberties, in order to coerce him into paying the debts. But it does not allow him to continue that confinement at the particular place, to the obstruction of the due

course of justice in other cases. He may be taken to other places to give evidence, or to answer for his contempt; and so long as he is kept for this purpose by judicial process, and is not given his liberty to go as he will, it is no escape. The prisoner in question was taken to Washington for a legitimate object. He must be deemed to have been a material witness before the house of representatives, and that body had power to compel his attendance, and to punish him as for a contempt, in case of his neglect or refusal to attend and testify. They had jurisdiction in the premises, and issued their customary warrant. The prisoner was arrested, and taken away and detained under it. The plaintiff's counsel concedes that the prisoner might have been lawfully taken on a *habeas corpus*, but insists that, inasmuch as he was taken on a different process, though for a legitimate purpose, he was unlawfully without the limits as respects the plaintiff. But it is clear that the prisoner himself could not resist the sergeant-at-arms with his warrant. He was obliged to go in the custody of that officer. True, he might purge or excuse the alleged contempt, by showing that he was imprisoned, and could not obey the subpœna, and by giving his testimony according to the requirements of the first process, but he could not refuse to attend according to the exigency of the warrant. Nor do I think the sheriff could have resisted the taking. The prisoner was out upon the liberties, upon bail, and not otherwise in the sheriff's custody. And suppose the sheriff had sued the sergeant-at-arms for taking the prisoner from the jail liberties, I do not see how he could have recovered. That officer could, I assume, have justified under his process. It is to be presumed that it was fair on its face, and was issued by a body having jurisdiction, and for a lawful object, even against one imprisoned.

It seems to me clear, therefore, that Williamson, the prisoner, was taken by authority of law, and in a manner which gave the sheriff no remedy or recompense against the officer taking him. It is of no consequence, as it seems to me, that the warrant was not in the form of a *habeas corpus*. That is strictly a judicial writ. It it not a process which the body requiring the testimony of the witness could issue. Its process is the

subpœna and the warrant, which were issued. It issued the only process it had or could issue. The house might perhaps in some form have applied to some court of competent jurisdiction, if one could be found, for a writ of *habeas corpus*, to bring the witness before it to testify or to answer for a contempt, though I think, under our complex system, some serious difficulties might have been found in the way of obtaining any such process. That seems to be the practice in England, where persons imprisoned on civil process are required as witnesses to testify before the house of commons or its committees. But there it seems to be a matter of practice, as in the matter of Sir Edward Price, a prisoner, 4 *East*. 587, who was confined in Ilchester jail by virtue of a commitment of the court of king's bench, for non-payment of a fine imposed as part of the judgment in a case of assault and battery. The prisoner was a material witness upon a question before the house of commons, and the speaker had issued his warrant to bring up the witness by the day appointed. But in order to obviate any difficulty which the jailor might make to suffer the prisoner to go out of confinement without the authority of the court, application was made to the court for a *habeas corpus ad testificandum*, to bring up the prisoner before the committee of the house. The court at first entertained doubts of the propriety of such an application, of which they did not recollect any precedent, but, after some hesitation, granted the rule to show cause, and afterward, upon the applicant undertaking to be at the expense of bringing the witness up and returning him to custody, made the rule absolute.

This is understood to be the practice now in Great Britain, in cases where witnesses are required before either house of parliament who are imprisoned. But the application in that case seems to have been made for more abundant caution and to avoid all difficulty with the jailor, and not for want of power in the house of commons to bring the witness up under its warrant. It is obvious that there is far less difficulty in such a practice in England than in this country, with its national and State legislatures and courts exercising separate and distinct jurisdiction. No such practice has ever, that I am aware of, been adopted in this country, and I do not regard it as a

vital question in the case. If it is a mere question of practice, as I think it is, it in no respect affects the jurisdiction of the house of representatives. If that body had the right to have the prisoner before it temporarily for such a purpose, that is enough, and the mere form of the process upon which he was taken is not material, provided the object appeared substantially upon its face and it was issued by competent authority. Whattles *v.* Marsh, *supra*.

In the view I take of this case, it is not necessary to decide whether the Congress of the United States possesses certain powers superior to State laws, by which it can override such laws, or deprive creditors of rights secured by them; I do not suppose that Congress has any such right, which it can exercise arbitrarily or capriciously, or in any way, except in the exercise of some power expressly granted by the Constitution of the United States, or of some power which belongs, as a necessary incident, to a clearly granted power. It is enough, however, for this case, to hold that either house of Congress has, at least, as much right to have an imprisoned witness before it, for the purpose of giving evidence when deemed necessary, as any party can have in an action in a court of justice, and that creditors hold their imprisoned debtors subject to the right of temporary removal, for the purpose of testifying in the one case as much as in the other. I do not think a witness thus in execution could be allowed, on a mere subpœna, to leave the jail, or the jail liberties, for the purpose of giving evidence at some other place, without rendering the sheriff liable for any escape, for the plain reason that a witness out in pursuance of such a process would clearly be at large, within the meaning of the statute, not being in the custody of any officer, or of the law. The subpœna does not authorize any one to take the witness into custody, or to detain him for any purpose, and, of course, he would be at large without restraint. But not so when taken upon a *habeas corpus* to testify, or, by virtue of an attachment or a warrant, to answer for an alleged contempt. He is in the custody of the law, when held for such a purpose, until regularly discharged, and is not at large in that sense which is necessary to constitute an escape. Here the action was commenced while the prisoner was in custody under the

speaker's warrant, and several days before he was discharged. Neither the sheriff nor his bail could have retaken him while thus held in custody, and the sheriff, most clearly, was in no respect to blame for the prisoner's absence from the jail liberties. He could not help it.

The action was, therefore, commenced before there was any escape, and while the prisoner was in the custody of the law, for a perfectly legitimate purpose. Having been commenced before any cause of action had accrued, the action can not be maintained. It is in no respect material to the case whether Williamson, the prisoner, had been guilty of a contempt, or, in other words, whether he had a valid excuse for not obeying the mandate of the subpœna. It is enough that he was charged with a contempt, and was taken into the custody of the officer of the body making the charge, on a regular process, which compelled him to appear and answer the charge. The judgment of the house on the question of contempt can not be examined or reviewed here. It does not distinctly appear from the facts found, when Williamson was released from the custody of the sergeant-at-arms, whether at Washington, or in New York, nor is it material, as the fact is found, that he was not released until February 9—four days after the action had been commenced. It appears that Williamson did, in fact, as soon as he was released, return to the liberties of said jail. The question whether the release of Williamson at Washington, and his voluntary return without restraint or compulsion to New York would have constituted an escape, is not presented by the facts found, and it is unnecessary to pass upon it. An escape after the action was commenced would not save it if there was no cause of action at the time of its commencement. I am of the opinion, therefore, that the judgement is right and should be affirmed.

All the judges present concurred.

Judgment affirmed, with costs.