## SUPREME COURT.

THE PEOPLE *ex rel.* GERALD O. TULLY agt. ALEXANDER V. DAVIDSON, sheriff.

*Habeas corpus — Bail — Stangers cannot be permitted to become bail for a man without his consent — What amounts only to a voluntary escape — Right of sheriff to retake prisoner on mesne process after an escape.*

The relator was arrested upon an order in a civil suit for conversion. While in custody under this order, which fixed his bail at $70,000, he was taken to the office of a United States commissioner, where extradition proceedings were begun against him for his extradition to Great Britain upon a charge of forgery. While these proceedings were going on relator was transferred to the custody of the United States marshal. He was finally discharged on *habeas corpus,* by the circuit court of the United States, but was at once rearrested and taken to jail again by persons acting under the pretended authority of an instrument in writing indorsed upon a paper purporting to be an undertaking by bail in the civil suit in the state court. The prisoner knew nothing about this undertaking, but it had been given to the sheriff without his knowledge or consent. It was executed by S. and B., both strangers to the prisoner,

People *ex rel.* Tully agt. Davidson.

and accepted by plaintiff's counsel by indorsement thereon. The instrument thus executed and accepted bore a further indorsement whereby B. assumed to depute two persons in his place and stead to arrest and surrender the prisoner to the sheriff in exoneration of B. as bail. On return of writ of *habeas corpus* the sheriff certified that he held the relator by virtue of this "surrender in exoneration of bail," and also by virtue of the order of arrest previously granted:

*Held,* that S. and B. never lawfully became the bail of the prisoner, nor ever possessed any power to surrender him. The sheriff derived no authority to hold him from any act done by either of the self constituted sureties.

The undertaking was a nullity so far as the prisoner was concerned. Strangers cannot be permitted to become bail for a man without his consent. The giving of bail constitutes a contract between the principal and his sureties, and the principal has a right to determine for himself whether he will assume the obligations of such a person or not. They cannot be imposed upon him against his will.

*Held,* further, that the transfer of the relator to the custody of the federal authorities and the subsequent transaction in reference to the so-called bail bond, amounted at most to a voluntary escape and the sheriff had a right to retake him by virtue of the original order of arrest which had not become *functus officio* and that he is lawfully in the custody of the sheriff.

*New York Chambers, August,* 1884.

THE relator was arrested on May 21, 1884, upon an order granted by Mr. justice DONOHUE in a civil suit for conversion, instituted in the supreme court by the Preston Banking Company of England. While in custody under this order, which fixed his bail at $70,000, he was taken to the office of a United States commissioner, before whom proceedings were begun against him for his extradition to Great Britain upon a charge of forgery. While these proceedings were going on the relator appears to have been transferred to the custody of the United States marshal. He was finally discharged on *habeas corpus* by the circuit court of the United States on June 18, 1884; but was at once rearrested and taken to jail again by persons acting under the pretended authority of an instrument in writing indorsed upon a paper purporting to be an undertaking by bail in the civil suit in the state court.

The prisoner knew nothing about this undertaking. It had been given to the sheriff without his knowledge or consent. It was executed by John Smith, who described himself as a stenographer, of No. 16 Marion street, and John Brady, Jr., of High Bridge. These gentlemen, both strangers to him, undertook to be responsible in the sum of $70,000 for the submission of the defendant to final process in the action. They omitted to make the usual affidavits of bail as to sufficiency, but the undertaking was nevertheless satisfactory to the plaintiff's attorneys, who signed an indorsement thereon in the following words:

We hereby admit due service by the sheriff of a certified copy of the within undertaking of bail, and hereby approve said undertaking as to form and manner of execution, and accept the bail therein named.

Dated New York, *June* 16, 1884.

MARTIN & SMITH.

This instrument, thus executed and accepted, bore a further indorsement whereby Mr. John Brady, Jr., assumed to depute two persons in his place and stead to arrest and surrender Gerald T. Tully to the sheriff in exoneration of Mr. Brady as bail.

On the return to the writ of *habeas corpus* in the present proceeding, the sheriff certifies that he holds the relator by virtue of this "surrender in exoneration of bail," and also by virtue of the order of arrest granted by Mr. justice DONOHUE.

*Charles H. Luscomb*, for relator.

*M. W. Divine* and *A. P. Whitehead*, for the Preston Banking Company.

*Edward J. Cramer*, for the sheriff.

BARTLETT, J. — I think it perfectly clear that the alleged surrender by bail conferred no authority upon the sheriff or anybody else to take or hold the prisoner. The undertaking

People *ex rel.* Tully agt. Davidson.

was a nullity so far as the prisoner was concerned. Strangers cannot be permitted to become bail for a man without his consent. The giving of bail constitutes a contract between the principal and his sureties, and the principal has a right to determine for himself whether he will assume the obligations of such a person or not. They cannot be imposed upon him against his will. In the view of the law, a person who has been admitted to bail is at all times in the custody of his sureties, who may break into his house to retake him, and may even arrest him on Sunday, always holding him, as it were, at the end of a string. The controlling power of the bail over the principal is one which can be exercised at all times and in all places (*Nicolls* agt. *Ingersol*, 7 *Johns.*, 156). A prisoner is entitled to choose whether he will give any one else this dominion over him or will remain in the custody of the sheriff. According to Sir William Blackstone, the security for the appearance of a party arrested is called bail because the defendant is bailed or delivered to his sureties, " and is supposed to continue in their friendly custody, instead of going to gaol" (3 *Blackst. Com.*, 290).

In the present case it was asserted by counsel upon the argument, and not denied, that the sureties, Messrs. Smith and Brady, were respectively a stenographer and a clerk in the office of the plaintiff's attorneys. It would be a mockery to hold that the employes of a law firm engaged in prosecuting a person for an alleged conversion of $70,000 could possibly be " friendly" toward the defendant. On the contrary, it is evident that they were agents in a scheme to injure the prisoner rather than benefit him by becoming his bail.

A slight effort was made to justify the giving of this remarkable undertaking by the argument that it was bail by the sheriff instead of to the sheriff, in other words that the sheriff having become liable to the plaintiff's attorneys for letting the prisoner out of his custody into that of the United States marshal, he thereupon gave this undertaking in his own behalf, and the plaintiff's attorney so accepted it. This argu

ment is disposed of by reference to the undertaking itself, which is indorsed as follows:

I certify that the defendant in this action has been held to bail by me, pursuant to the order of arrest issued herein, and I further certify that the within is a true copy of the bail taken by me under the said order.

A. V. DAVIDSON, *Sheriff.*

It is hardly conceivable that the sheriff would speak of the bail as being "taken by me," if he thought he was giving bail himself.

I do not think that Messrs. Smith and Brady ever lawfully became the bail of Gerald T. Tully, or ever possessed any power to surrender him. The sheriff derives no authority to hold him, from any act done by either of these self-constituted sureties.

It is contended, however, in behalf of the plaintiff in the civil suit, that the transfer of the relator to the custody of the Federal authorities and the subsequent transaction in reference to the so-called bail bond, amount at most only to a voluntary escape; that the right of the sheriff to retake a prisoner on mesne process after an escape is well settled, and hence that the present detention of the relator is lawful.

I think these propositions are correct.

It is doubtful whether the sheriff could be held liable for an escape on allowing the United States marshal to take the relator during the pendency of the extradition proceedings, even against the wishes of the plaintiff in the civil action (*See Wilckens* agt. *Willet,* 1 *Keyes,* 521).

As to the pretended letting to bail of the defendant, it must be regarded as a nullity in all respects. If deemed ineffectual for purposes of surrender, it cannot be deemed valid to effect the prisoner's release by reason of the act of the plaintiff's attorneys in accepting the so-called bail. But assuming that there was a technical escape while the persons deputed to execute the surrender were conveying the prisoner to the jail, the sheriff had a right to retake him by virtue of

the original order of arrest, which had not become *functus officio* ( *Arnold* agt. *Steeves*, 10 *Wend.*, 193; *Bronson* agt. *Noyes*, 7 *Wend.*, 193). The order still remained valid process.

Under the old practice, if any one obstructed the sheriff in his efforts to retake a defendant after escape, an attachment would issue against the offender " the same as in all other cases of obstructing the execution of the process of the court" ( *Graham's Practice*, 149).

My conclusion is that the relator is lawfully in custody by virtue of a mandate in a civil cause, notwithstanding the events which have occurred since his original imprisonment began, and that the proceedings must therefore be dismissed.