(23 Misc. Rep. 495.)

### PEOPLE ex rel. McDONALD v. LEUBISCHER.

(Supreme Court, Special Term, New York County. May 11, 1898.)

1. CONTEMPT—POWER TO PUNISH—COMMISSIONERS.
    Code, § 920, providing that one who fails to appear as required in the subpœna, or to testify, is liable to the penalty which would be incurred in a like case in a justice court, and that for that purpose the officer before whom he is required to appear possesses the powers of a justice, and section 3001, providing that where a witness before a justice refuses to answer a proper question he may be committed, do not authorize a notary public appointed a commissioner to take evidence by a commission out of a foreign jurisdiction to commit a witness for refusal to answer a question propounded to him.

2. COURTS—RULES OF DECISION—DICTA.
    A judicial opinion on a point not necessary to a decision of the question before the court is dictum, and has no binding force.

3. DUE PROCESS OF LAW—CONTEMPT.
    If Code, § 920, in effect provides that a witness who refuses to testify before a commissioner designated by a foreign court to take a deposition may be committed by the commissioner for contempt, it is in violation of Const. art. 1, § 6, which forbids that any one shall be deprived of liberty without due process of law.

Habeas corpus, on the relation of Gordon McDonald, against Louis Leubischer, city marshal. Prisoner discharged.

William Jay (David McClure, of counsel), for relator.
John W. Hutchinson, Jr., for respondent.

COHEN, J. On the 26th of March, 1898, a commission was issued out of the district court of Arapahoe county, Colo., directed to Edward J. McCabe, a notary public, and appointing him a commissioner, and authorizing and requiring him to examine, among others, the above-named relator as a witness in a certain action then pending in the said district court, and to reduce the examination to writing, etc. Subsequently, and on the 4th day of April, on application to one of the justices of this court under section 915 of the Code of Civil Procedure, a subpœna was issued to the relator and others, directing them to appear before said commissioner, at his office, to be examined, and reciting that "for a failure to appear" the relator would be guilty of a contempt of court. McDonald duly appeared before the commissioner, and after having been sworn, and having answered some questions, refused to answer others, under the advice of counsel. The commissioner thereupon issued a commitment, signed "Commissioner and Notary Public," directed to the respondent, a marshal of the city of New York, and to the sheriff of the county, against said McDonald for contempt, under section 920 of the Code, and he

was by said marshal taken into custody. The petitioner thereupon sued out a writ of habeas corpus, and, the marshal having filed his return, the question now before the court is whether the prisoner should be discharged or remanded. The petitioner asks his discharge on the ground that he is restrained of his liberty without authority of law. As the pleadings are not before me, I cannot pass upon the materiality or the pertinency of the questions which the relator refused to answer. It is conceded that some of the questions were pertinent, and certain it is that "the party, at whose instance the relator attended, made oath that the testimony of the witness was so far material that without it he could not safely proceed to the trial of the action," as required by our Code (section 3001). It was also conceded on the argument that the commitment was sufficient in form, provided there was any authority in the commissioner to issue it. It seems to me that the commissioner had no such authority. The fact that the person named happened to be, and is also designated as, a notary public cannot alter the conclusion. Power and authority were conferred upon him by the district court of Arapahoe county, in the state of Colorado, and by it he was made a commissioner, and directed as such commissioner to take the testimony of certain witnesses. Under section 915 of the Code he had no power to command the witnesses named to appear before him. That was given by statute to a judge of this court. If the position of the respondent is correct, we are confronted by a judicial officer who finds himself in this somewhat anomalous situation: With no power to command the attendance of a witness, he yet has the greater power to imprison him after the witness had appeared. The court of appeals has held that it is not in the power of a justice of this court, in a similar case, to hear or determine, under sections 914–920 of the Code, an application to punish a witness for contempt. In re Searls, 155 N. Y. 333, 49 N. E. 938. But the court in its opinion expressly refrains from deciding what power such a commissioner may lawfully exercise when a witness is brought before him. It is true that it decided that a notary was a public officer (People v. Rathbone, 145 N. Y. 437, 40 N. E. 395), and intimated that his duties are of a judicial character (In re Searls, supra); but the latter proposition was a dictum, and not necessary to a decision of the questions before the court in either case. We have been recently advised by that court that "it was not the intention to decide any case but the one before us. * * * If, as sometimes happens, broader statements were made, by way of argument or otherwise, than were essential to the decisions of the questions presented, they are the dicta of the writer of the opinion, and not the decision of the court. A judicial opinion, like evidence, is only binding so far as it is relevant; and when it wanders from the point at issue it no longer has force as an official utterance." Colonial Traction Co. v. Kingston R. Co., 154 N. Y. 493, 48 N. E. 900. This caution was given more recently still in Stokes v. Stokes (N. Y. App.) 50 N. E. 342. But, as has been intimated, it can make no difference in this case whether the commissioner was or was not a notary public, because his powers are such as have been conferred upon him as a commissioner only, by a court of foreign jurisdiction,

and other powers he has none, except such as he may lawfully derive from the statutes of this state.

It is contended that the power to punish for a contempt is contained in sections 920 and 3001 of the Code, which are as follows:

"Sec. 920. A person who failed to appear at the time and place specified in a subpœna, issued as prescribed in this article and duly served upon him, or to testify; or to subscribe his deposition when correctly taken down, is liable to the penalties which would be incurred in a like case if he was subpœnaed to attend the trial of an action in a justice's court; and for that purpose the officer before whom he is required to appear possesses all the powers of a justice of the peace upon a trial."

"Sec. 3001. Where a witness, attending before a justice [of the peace] in an action, refuses to be sworn or affirmed in the form prescribed by law or to answer a pertinent and proper question, or neglects or refuses to produce a book or paper which he has been duly subpœnaed to produce, as prescribed in section 2969 of this act, or duly required to produce by an order, made as prescribed in section 867 of this act, and the party at whose instance he attended makes oath that the testimony of the witness, or the book or paper, is so far material that without it he cannot safely proceed with the trial of the action, the justice may, by warrant, commit the witness to jail of the county."

Is this contention correct? It may be stated, as a general proposition, that the power to punish for contempt is judicial in its nature, and is an incident of a court only. Wilckens v. Willet, *40 N. Y. 521; People v. Keeler, 99 N. Y. 463, 2 N. E. 615. Indeed, the subject of contempts is treated by the Code itself as "a power and attribute of the courts" (chapter 1, tit. 1, art. 2, § 8); and in article 1 is contained an enumeration and classification of the courts referred to in the Code. I can find no mention of this commissioner's court, or of its powers or jurisdiction, either in the sixth article of the constitution or the statute law of this state. The power to punish for contempt is so closely guarded that it is not even given to congress or the legislature of this state, except in so far as it is auxiliary to the legislative power only. Kilbourn v. Thompson, 103 U. S. 168; People v. Keeler, supra. I cannot, therefore, regard the respondent's position as sound, as it would follow that the legislature gave to an individual with no judicial function, except possibly to pass on the pertinency of a question, the power to punish for a contempt of a court which is not known to the laws of this state.

But it may be said that the legislature so clearly intended that, for the purposes of comity between the states, a person designated by a court of another state should have the power to deprive a citizen of this state of his liberty, that there is no room for judicial construction. If such were the purpose and intent, such legislation is a violation of the bill of rights as embodied in section 6 of article 1 of the constitution, which forbids that any one shall be deprived of liberty without due process of law. "This provision is the most important guaranty of personal rights to be found in the federal or state constitutions. It is a limitation upon arbitrary power, and is a guaranty against arbitrary legislation. No citizen shall be arbitrarily deprived of his life, liberty, or property. This the legislature cannot do, nor authorize to be done. * * * This great guaranty is always and everywhere present to protect the citizen against interference with these sacred rights." This is a characterization of the

term "due process of law" by Judge Earl in Stuart v. Palmer, 74 N. Y. 183; and, tested by it, has this relator been deprived of his liberty by "due process of law"? Let us consider what the effect of such an adjudication would be. By the designation of a court in another state of a commissioner, he may set up his office here and his court, and by virtue of his authority imprison any one of our citizens. This commissioner, if he happens to be a notary public, may be one of over four thousand of our citizens. If he be not a notary, he may be one of the six and a half million inhabitants of this state, whether citizen or alien. He even may be an inhabitant of any of the United States or of a foreign country. Section 914. By the Code provisions hereinbefore referred to, without any knowledge of his character or intelligence or citizenship, the legislature stamps its authority on such an individual, establishes a court over which he shall be judge, and bestows as an incident of his judicial office the grave power to punish for contempt. This brief recital of possibilities makes clear the arbitrary character of such legislation, and its reckless disregard of the liberty of our citizens. I am impressed in reaching this conclusion by the wisdom of Mr. Justice Miller in leaving "the meaning of the term 'due process of law' to be evolved by the gradual process of judicial inclusion and exclusion, as the cases presented for decision shall require, with the reasons on which such decisions may be founded." Davidson v. Board, 96 U. S. 97.

There is a decision of this court on the question here presented. In Re Bloomingdale (Feb., 1879) 1 N. Y. Law Bul., it was held, without further statement of reasons, that a similar commitment was void and without authority. I am but following that ruling. As, however, the determination of the question presented is far-reaching and important in its consequences, the relator's counsel must stipulate to argue the appeal, during the present term of the appellate division, from any order that may be entered on this decision.

The prisoner is discharged.